IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) No. 05 CR 9-1 |
| v. | ) |
| | ) Hon. Wayne Andersen |
| | ) |
| ADAM B. RESNICK | ) |
| | ) |

**ANSWER TO GOVERNMENT'S PETITION FOR RELIEF**

Respondent, DOMENIC POETA ("Poeta"), by GARY RAVITZ, ERIC S. PALLES, and

RAVITZ & PALLES, P.C., his attorneys, in answer to the government's Petition for Relief, states

as follows:

1. Plaintiff-petitioner is the United States.

ANSWER: He admits the allegations contained in paragraph 1.

2. Defendant Adam Resnick pleaded guilty to wire fraud under 18 U.S.C. § 1343. In January 2007, this court sentenced Resnick to 42 months in prison, and ordered him to pay restitution in the amount of $10,234,909 (which was later amended to be $10,457,825).

ANSWER: He is without sufficient knowledge to form a belief as to the truth of the allegations

contained in paragraph 2.

3. Third-party citation respondent Dominic Poeta, a/k/a Domenic Poeta, is a resident of Highwood, Illinois and the proprietor of a butcher shop that is also in Highwood, Illinois. Poeta is an acquaintance of Resnick, and, as detailed below, from about August 2001 to June 2002 Poeta operated as a bookie for defendant and received hundreds of thousands of dollars in illegal wagers from Resnick.

ANSWER: He admits that he is a resident of Highwood, Illinois and proprietor of a butcher

shop that is also in Highwood. Regarding the remaining allegations, he invokes his privilege

against self-incrimination, as set forth in the Fifth Amendment of the U.S. Constitution and

Article 1, Section 10 of the Illinois Constitution.

4. Under 18 U.S.C. § 3613(a) the United States may enforce a criminal money judgment according to the practices and procedures for enforcing civil judgments under state law. The Court has jurisdiction over Poeta in this post-judgment enforcement proceeding by virtue of a third party citation to discover assets served on the respondent pursuant to Fed. R. Civ. P. 69, which incorporates state post-judgment enforcement procedures, and §§ 2-1402 of the Illinois Code of Civil Procedure (735 ILCS 5/2-1402) and Illinois Supreme Court Rule 277, which govern citations to discover assets.

ANSWER: Paragraph 4 states a legal conclusion to which no response is required.

5. In August 2007, Poeta appeared personally and with counsel at the offices of the United States Attorney for examination by counsel for the United States pursuant to a third-party citation to discover assets that was personally served on him.

ANSWER: He admits the allegations contained in paragraph 5.

6. In January 2005, a six-count indictment was filed in the captioned criminal case against Adam Resnick, and others, charging him with conspiracy to misapply funds; misapplying funds; bank fraud; aiding and abetting, and wire fraud. The defendant appeared and pleaded not guilty to the charges.

ANSWER: He is without sufficient knowledge to form a belief as to the truth of the allegations

contained in paragraph 6.

7. Resnick and his codefendants engaged in a check-kiting scheme by manipulating account balances at Universal Federal Savings Bank, where one of the codefendants worked, and at American National Bank (n/k/a JP Morgan Chase Bank), where Universal had a correspondent account. From about December 2001 to June 2002, the checking kiting scheme allowed Resnick to siphon from Universal about $10.2 million only a fraction of which was recovered by the government. Resnick gambled away a substantial portion of this money in legal gambling establishments and through use of illegal bookies.

ANSWER: He is without sufficient knowledge to form a belief as to the truth of the allegations

contained in paragraph 7.

8. On July 6, 2006, pursuant to a written plea agreement with the United States, the defendant withdrew his plea of not guilty and entered a plea of guilty to count five of the indictment alleging wire fraud.

2

ANSWER: He is without sufficient knowledge to form a belief as to the truth of the allegations contained in paragraph 8.

9. On January 16,2007, this court sentenced Resnick to 42 months in prison and found him liable for $10.2 million in restitution, of which $9.75 million is owed to the Federal Deposit Insurance Corporation. The FDIC was forced to take over Universal in June 2002 when Universal collapsed upon discovery and as the direct result of Resnick's check-kiting scheme.

ANSWER: He is without sufficient knowledge to form a belief as to the truth of the allegations contained in paragraph 9.

10. Pursuant to 18 U.S.C. §§ 3613(c), upon the entry of judgment on January 22, 2007, a lien arose upon all property and rights in property belonging to Adam Resnick. On March 8, 2007, the United States perfected its lien by recording a notice of lien in the Lake County Recorder of Deeds Office as document number 6148484.

ANSWER: He is without sufficient knowledge to form a belief as to the truth of the allegations contained in paragraph 10.

11. Resnick met Dominick Poeta in or about August 2001. Resnick's check-kiting scheme began in December 2001. Also in December 2001, Resnick began paying Poeta money, the source of which was check-kiting scheme proceeds.

ANSWER: He is without sufficient knowledge to form a belief as to the truth of the allegations concerning Resnick's check-kiting scheme. Regarding the remaining allegations, he invokes his privilege against self-incrimination, as set forth in the Fifth Amendment of the U.S. Constitution and Article 1, Section 10 of the Illinois Constitution.

12. Attached as Exhibit 1 is a recapitulation which truly and accurately describes the negotiable instruments Resnick gave to Poeta and which Poeta negotiated to his own benefit.

ANSWER: He invokes his privilege against self-incrimination, as set forth in the Fifth Amendment of the U.S. Constitution and Article 1, Section 10 of the Illinois Constitution.

13. Resnick made the checks payable to Dominic Poeta or to "cash," and Poeta then negotiated the checks - both those made to himself and to cash - as evidenced by his endorsement on the reverse side of the instrument as well as the deposit records obtained concerning accounts

3

Poeta maintained at various financial institutions where the instruments were deposited. However, one of the checks, written for $48,111, Poeta endorsed over to Semersky Enterprises, a Highland Park Saab dealership, as payment for a vehicle.

ANSWER: He invokes his privilege against self-incrimination, as set forth in the Fifth Amendment of the U.S. Constitution and Article 1, Section 10 of the Illinois Constitution.

14. In total, Resnick paid Poeta $891,211.11. Exhibit 1. The money is directly traceable to the proceeds of Resnick's check-kiting scheme.

ANSWER: He is without sufficient knowledge to form a belief as to the truth of the allegations concerning Resnick's check-kiting scheme. Regarding the remaining allegations, he invokes his privilege against self-incrimination, as set forth in the Fifth Amendment of the U.S. Constitution and Article 1, Section 10 of the Illinois Constitution.

15. Adam Resnick was a gambler who made wagers legally, in lawful gambling establishments, as well as wagering illegally with bookies.

ANSWER: He invokes his privilege against self-incrimination, as set forth in the Fifth Amendment of the U.S. Constitution and Article 1, Section 10 of the Illinois Constitution.

16. During all times relevant to this petition, Dominic Poeta, among other things, was a "bookie" - i.e., a person who: (1) accepts illegal wagers on sporting events and other such things, on his own account, his own "book" or on the account of another person; and (2) collects "juice," which is the fee charged on a lost wager and can also be interest charged on a lost wager that is not paid on time.

ANSWER: He invokes his privilege against self-incrimination, as set forth in the Fifth Amendment of the U.S. Constitution and Article 1, Section 10 of the Illinois Constitution.

17. The $891,111 Resnick transferred to Poeta was entirely the result of illegal gambling and in payment of lost wagers and juice.

ANSWER: He invokes his privilege against self-incrimination, as set forth in the Fifth Amendment of the U.S. Constitution and Article 1, Section 10 of the Illinois Constitution.

18. At the time of each transfer detailed in Exhibit 1, Resnick was rendered insolvent

4

and increasingly so. Resnick had few assets of his own. With each transaction that he siphoned money from Universal Bank, Resnick became indebted to Universal for the amount of fraud proceeds he obtained. His debt to Universal alone - which would later be reduced to a restitution judgment for- greatly exceeded his meager assets from the very first transaction in which he obtained illegal fraud proceeds and then transferred them to Poeta to pay his unlawful gambling debts. Moreover, Resnick knew or should have known at the time of each of the transfers that he would face civil and criminal restitution claims in excess of the amounts transferred.

ANSWER:     He is without sufficient knowledge to form a belief as to the truth of the allegations

contained in paragraph 18.

19.     On April 9, 2007, the United States served a citation to discover assets on Poeta.

ANSWER:     He admits the allegations contained in paragraph 19.

20.     Pursuant to the citation, on August 23, 2007 Poeta appeared with counsel to be examined under oath as to the assets of Adam Resnick. Exhibit 2, transcript of the citation examination of Dominic Poeta, partially redacted and without exhibits.

ANSWER:     He admits the allegations contained in paragraph 20.

21.     At the citation examination, having first been duly sworn, to specific questions regarding the financial transactions between himself and Resnick Poeta repeatedly invoked his Fifth Amendment right not to be compelled to give testimony that might tend to incriminate him criminally. Ex. 2, pp. 8-10 and passim. Among other things, Poeta invoked his Fifth Amendment privilege to the following questions:

(A) That Poeta was in fact the bookie that Adam Resnick describes by the pseudonym, "Luciano 'Lucky' Petrelli" in his book, Bust. Ex. 2, pp. 18-21.

(B) That Poeta was in fact a bookie for Adam Resnick. Ex. 2, p. 21.

(C) That Poeta in fact received all the negotiable instruments detailed in Exhibit 1. Ex. 2, pp. 26-43.

(D) That Poeta received all the negotiable instruments listed in Exhibit 1 totaling $891,111 in payment of illegal gambling debts. Ex. 2, p. 43.

ANSWER:     He admits that he invoked his Fifth Amendment privilege throughout the citation

proceeding, the transcript of which speaks for itself.

## COUNT I

1-21.    The United States realleges and incorporates by reference paragraphs one through twenty-one above as paragraphs one through twenty-one of this Count I.

ANSWER:    Domenic Poeta restates his answers to paragraph 1-21, as if set forth more fully herein.

22.    Resnick transferred $891,111 to Poeta with actual intent to hinder, delay or defraud the United States and Universal Federal Savings inasmuch as Resnick received no legal consideration in exchange from Poeta at the time the transfers occurred; the transfers rendered Resnick insolvent; the transfers were payment of unlawful gambling debts, which, as a matter of law, provides no consideration for a legally enforceable contract; and Resnick, at the time of the transfers, believed or reasonably should have believed that he would incur debts beyond his ability to pay.

ANSWER:    He is without sufficient knowledge to form a belief as to the truth of the allegations concerning Resnick's intent. Regarding the remaining allegations, he invokes his privilege against self-incrimination, as set forth in the Fifth Amendment of the U.S. Constitution and Article 1, Section 10 of the Illinois Constitution, except that he specifically denies the truth of the legal conclusions contained in paragraph 22.

23.    Resnick undertook the aforesaid acts and omissions in violation of 28 U.S.C. § 3304(b )(1 )(A).

ANSWER:     He denies the truth of the allegations and legal conclusions contained in paragraph 23.

## COUNT II

1-21.    The United States realleges and incorporates by reference paragraphs one through twenty-one above as paragraphs one through twenty-one of this Count II.

ANSWER:    Domenic Poeta restates his answers to paragraph 1-21, as if set forth more fully herein.

22.     Resnick transferred $891,111 to Poeta without receiving reasonably equivalent value in exchange, because, as a matter of law, the opportunity to illegal gamble provides no consideration for a legally enforceable contract, and Resnick intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay.

ANSWER:     He is without sufficient knowledge to form a belief as to the truth of the allegations concerning Resnick's intent. Regarding the remaining allegations, he invokes his privilege against self-incrimination, as set forth in the Fifth Amendment of the U.S. Constitution and Article 1, Section 10 of the Illinois Constitution, except that he specifically denies the truth of the legal conclusions contained in paragraph 22.

23.     Resnick undertook the aforesaid acts and omissions in violation of 28 U.S.C. §3304(b)(1)(B)(ii).

ANSWER:     He denies the truth of the allegations and legal conclusions contained in paragraph 23.

WHEREFORE, Citation- Respondent, DOMENIC POETA, prays for judgment in his favor and for the costs of this action.

Respectfully, submitted,

  /s/ Eric S. Palles
One of the attorneys for Domenic Poeta

GARY RAVITZ
ERIC S. PALLES
RAVITZ & PALLES, P.C.
203 N. LaSalle, Suite 2100
Chicago, IL 60601
(312) 558-1689