IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No.  05 CR 9-1 |
| ADAM B. RESNICK | ) | |
| | ) | Judge Wayne Andersen |
| Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DOMINIC POETA, | ) | |
| | ) | |
| Third-Party Citation Respondent. | ) | |

**UNITED STATES' MEMORANDUM OF LAW
IN SUPPORT OF ITS AMENDED MOTION FOR ENTRY OF
JUDGMENT ON ITS PETITION FOR RELIEF AGAINST DOMINIC POETA**

**Introduction**

The United States petitioned this court for relief against respondent Dominic Poeta ("Poeta") to assist in enforcing the judgment entered against defendant Adam Resnick ("Resnick").  The petition seeks a money judgment against Poeta and in favor of the United States.  The facts undeniably show that Adam Resnick transferred $647,211 in  proceeds from his crime to Poeta in payment of an illegal gambling debt.  Based on these facts the United States is entitled to a judgment against Poeta for $647,211 plus prejudgment interest.

**Facts**

Defendant Adam Resnick  pleaded guilty to wire fraud, 18 U.S.C. § 1343.  In January 2007, this court sentenced Resnick to 42 months in prison, and ordered him to pay restitution in the amount of $10,234,909 (which was later amended to be $10,457,825).  Plaintiff's Petition for Relief

¶ 2.[1]

Resnick and his co-defendants engaged in a check-kiting scheme by manipulating account balances at Universal Federal Savings Bank, where one of the co-defendants worked[2], and at American National Bank (n/k/a JP Morgan Chase Bank), where Universal had a correspondent account. From about December 2001 to June 2002, the checking kiting scheme allowed Resnick to siphon from Universal about $10.2 million. Plaintiff's Petition for Relief ¶ 7.[3]

In an effort to enforce this court's restitution judgment, the United States served Poeta with a citation to discover assets. Pursuant to the citation, on August 23, 2007 Poeta appeared with counsel to be examined under oath as to the assets of Resnick. A transcript of the examination is attached hereto as Exhibit E.

---

[1] Poeta did not deny this allegation but merely stated he was "without sufficient knowledge to form a belief as to the truth of the allegations." Answer, ¶ 2. It is proper in this circumstance to deem this failure to deny an admission. *See Shakman v. Democratic Organization of Cook County*, 533 F.2d 344,352 (7th Cir. 1976) (post-judgment contempt petition; affirming court's deeming as admitted respondent's failure to deny notice allegation); *Gilbert v. Johnston*, 127 F.R.D. 145,146 (N.D. Ill. 1989) (not sufficient to state lack of knowledge but lack of knowledge *and* information). Moreover, Resnick's conviction was a matter of public record and not susceptible to an answer alleging a lack of knowledge. *Porto Transport, Inc v. Consolidated Diesel Elec Corp*, 20 F.R.D. 1 (S.D.N.Y.1956) (defendant may not assert lack of knowledge or information as to matters of public record). It is further proper because Poeta's answer is dilatory and should not be tolerated in supplementary proceedings. *Resolution Trust Corp. v. Ruggiero*, 994 F.2d 12221, 1227-28 (7th Cir. 1993) (affirming district court's entry of judgment on creditor's postjudgment petition after striking citation respondent's frivolous Rule 12 motion that sought to dismiss for failure to state a claim and presenting no evidence of a factual error in the petition).

[2] Navarro, Elisco & Associates was an accounting firm. Adam Resnick's co-defendant, Terrence M. Navarro, was one of the principals of Navarro, Elisco & Associates and he allowed Adam Resnick to have signatory rights to the Navarro, Elisco account at Universal. Exhibit E (Chizana Aff. n. 1) and Exhibit C (Plea Agreement), p. 4.

[3] Poeta again states he is "without sufficient knowledge" but the allegation should nevertheless be deemed admitted. *See* note 1. The check-kiting scheme was detailed in Resnick's Plea Agreement file in this case. Exhibit C (Plea Agreement), pp. 2-8.

**The Transfer of the Crime Proceeds to Poeta**

Resnick met Dominick Poeta in or about August 2001, and in December 2001 he began paying Poeta money, the source of which was check-kiting scheme proceeds. Exhibit A (Petition for Relief) ¶ 11. [4] The relationship between Resnick and Poeta was set out in a book Adam Resnick authored called *Bust*. *See* Exhibit D (*Bust* Excerpts), pp. 186-89, 195-96. Resnick refers to Poeta in the book by the pseudonym "Luciano" and "Lucky."[5] Excerpts of *Bust* were shown to Poeta at his citation examination. Exhibit E (Poeta deposition), pp. 16-27. The *Bust* excerpts describe Poeta as Resnick's bookie; detail some of the illegal wagers Resnick placed with Poeta, and that Resnick was using the Universal Bank fraud proceeds to pay gambling debts owed to Poeta. *See* Exhibit D (*Bust* Excerpts).

Poeta was shown the *Bust* excerpts at his citation examination and, as set forth at paragraph 21 in the Petition, among other things, Poeta invoked his Fifth Amendment privilege to the following questions that Poeta was in fact :

- the bookie that Adam Resnick describes by the pseudonym, "Luciano 'Lucky' Petrelli" in his book, *Bust*. Ex. D, pp. 18-21.

- a bookie for Adam Resnick. Ex. D, p. 21.

- the recipient of all the negotiable instruments detailed in Exhibit 1. Ex. D, pp. 26-43.

---

[4] Poeta asserted his Fifth Amendment privilege to these assertions both in his deposition (*see* Exhibit E, pp. 16-27) and in his answer to the Petition (¶11). The district court can draw negative inferences from the assertion of privilege. "'The Fifth Amendment does not forbid inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them.'" *Daniels v. Pipefitters' Assn. Local Union No. 597*, 983 F.2d 800, 802 (7th Cir.1993) (*quoting Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)).

[5] Letter from Adam Resnick to Joseph Stewart, dated August 7, 2007. The United States produced the letter to Poeta's attorney.

- received all the negotiable instruments listed in Exhibit 1 totaling $891,111 in payment of illegal gambling debts. Ex. D, p. 43.

In his Answer to these same allegations in the Petition, Poeta again took the Fifth. Exhibit B, ¶ 21.

The link between the fraud Resnick perpetrated on Universal Bank and his use of the proceeds to pay Poeta for illegal gambling debts, is further demonstrated by the checks that Resnick used to pay Poeta. The checks — there are sixteen checks which form the basis for the government's claim — were either drawn directly from Universal Bank via a cashier's check or drawn from co-defendant's Navarro, Elisco & Associates' checking account. Exhibit F, Affidavit of Paralegal Specialist Shari Chizana, ¶¶ 5(a) through (p).

All but one check the government traced into bank accounts owned by Poeta. *Id*. at ¶¶ 5(a) through (o). In each case the United States obtained copies of each check from the drawee bank and from the bank at which Poeta deposited the check. *Id*. The last check was endorsed by Poeta and negotiated to Smersky Enterprises. *Id*. at ¶ 5(p).[6] Each of the 16 check bears Poeta's endorsement. *Id*. at ¶¶ 5(a) through (o).

At his deposition, Poeta was presented with copies of each of the sixteen checks[7] and asked the following questions, that Poeta:

- received the check

- endorsed the check

---

[6] Although it is a matter collateral to this action, the United States discovered Smersky Enterprises to be a Saab dealership that was in Highland Park, Illinois and at which Poeta had apparently used the proceeds — $48,111.11 — to purchase a used vehicle. In any event, his endorsement on the check is enough to demonstrate he received value from Resnick regardless of what he did with the proceeds after negotiating the check.

[7] Resnick was in fact presented with 18 checks totaling $891,211, but the United States is withdrawing its claim with respect to two of those checks, which reduces the claim to $647,211. Exhibit F( Chizana Aff.), ¶ 5(q).

4

- deposited the check; and

- received the check as payment on an illegal gambling debt.

Exhibit E, pp. 26-45. In response to each question, Poeta refused to answer based upon his rights under the Fifth Amendment. *Id.* In response to these same allegations in the Petition, Poeta again refused to answer based upon his rights under the Fifth Amendment. Exhibits A (Petition) and B (Answer), ¶¶ 12-14. The sixteen checks Resnick gave Poeta as payment on illegal gambling debts total $647,211. Exhibits F (Chizana Aff.), ¶ 5(q) and F, 12.

The Petition the United States brought against Resnick contains about 25 allegations. To those, Poeta:

> – admitted only the five, undeniable allegations, like the United States was the plaintiff, that Poeta was served with a citation, was deposed under oath and had counsel present (Answer, ¶¶ 1, 3, 5, 19 &20);
>
> – denied, for insufficient information 11 allegations, most of which are matters of record in this case and could have been easily discovered and affirmatively answered by him (Answer, ¶¶ 2, 7, 8-11 &14); and
>
> – declined to answer on Fifth Amendment grounds 11 allegations, 9 of which are based on documentary evidence with which at his deposition the United States confronted Poeta, and at which time he also declined to answer on Fifth Amendment grounds. (Answer, *passim*)

What the Poeta's Answer shows is that he cannot candidly address the evidence in this case for to do so would be to admit liability. Instead, Poeta provides dilatory responses that do not support a *bona fide* dispute or defense but are only intended to obfuscate the facts and prolong these proceedings.

**Standard for Summary Judgment**

Summary judgment is appropriate when the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmovant must produce "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). A genuine issue of material fact exists only when a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant "can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322, 324.

Summary judgment under the particular circumstances of this case — a supplemental proceeding — is particularly appropriate. The Seventh Circuit has affirmed the summary entry of judgement against a citation respondent where there is an absence of disputed fact. *Resolution Trust Corp. v. Ruggiero*, 994 F.2d 12221, 1227-28 (7th Cir. 1993) (affirming district court's entry of judgment on creditor's postjudgment petition after striking citation respondent's frivolous Rule 12 motion that sought to dismiss for failure to state a claim and presenting no evidence of a factual errors in the petition). In citation proceedings, a district court is not bound to strictly follow and apply "every jot and tittle of Illinois procedural law and every jot and tittle of federal procedural law." *Id*. at 1226. "Proceedings to enforce judgments are meant to be swift, cheap, informal." *Id*.

Finally, once the facts are established, any legal theory, regardless of whether it was asserted in the complaint, can be the basis for the entry of judgment. *Ryan v. Illinois Dept. of Children and Family Services*, 185 F.3d 751, 764 (7th Cir. 1999) ("plaintiffs are not required to plead legal theories")

### Argument

The evidence supporting the Petition shows Poeta received $647,211 from Resnick and gave nothing in return. It is clear that Poeta will simply rest on his rights under the Fifth Amendment and has abandoned any defense to the Petition. Based on Poeta's considered decision to not contest the facts set forth Petition, both by his prior invocation of the Fifth Amendment and by his decision to present a dilatory response to the Petition, this court would be acting within its discretion to enter judgment against Poeta.

Based on the particularly egregious facts here, there seems to be no choice but to enter judgment. Adam Resnick stole money and gave a substantial amount of it to Poeta — his bookie. To allow Poeta to escape liability would be to create a safe harbor for crime proceeds gratuitously given to third parties. However, that is simply contrary to the law.

### A.    Restitution

In Illinois, unauthorized gambling is illegal and a violation of the criminal law. § 28-1(a) of the Illinois Criminal Code of 1961, 720 ILCS 5/28-1(a). To enforce this proscription, the Illinois Criminal Code deems any contract made in "consideration" of illegal gambling " void." § 28-7(a). The Illinois Criminal Code further allows:

> "Any obligation void under this Section may be set aside and vacated
> by any court of competent jurisdiction, upon a complaint filed for that
> purpose, . . . by any creditor . . . .

§ 28-7(b).   Clearly, Resnick and Poeta's agreement to engage in illegal gambling is void under Illinois law.  The checks Resnick gave Poeta were in payment of illegal gambling debts, and based upon principles of unjust enrichment and restitution Poeta should not be able to retain that money for which he gave nothing of legal value.

The FDIC, as the victim of Resnick's fraudulent scheme, has the superior right to this money.  Poeta received crime proceeds and gave nothing in return so he is certainly in possession of "ill-got gains" for which principles of restitution require the imposition of *liability.  United States v. Shepard*, 269 F.3d 884, 885-86 (7th Cir. 2001) ("Restitution usually means the return of ill-got gains or other sums to which the holder is not legally entitled . . .").   Because the crime proceeds are traceable directly into Poeta's possession there is no legal impediment to his liability.

Looking at it from another perspective, the money Resnick paid to Poeta was stolen money, and a thief cannot acquire nor give good title to a subsequent transferee.  *Hobson's Truck Sales, Inc. v. Carroll Trucking, Inc.*, 276 N.E.2d 89, 92 (Ill. App. 1971).  Poeta may claim an exception to this rule, which exists in some circumstances for negotiable instruments where the transferee is a "holder in due course."  *Douglass v. Wones*, 458 N.E.2d 514, 519(Ill. App.1983).  A holder in due course is one who takes a check for value, in good faith, and without notice of defects (*e.g.*, it is not subject to defenses).  810 ILCS 5/3-302*(a); Coleman v. Heidke*, 684 N.E.2d 163, 166 (Ill. App. 1997).

Because Poeta took the sixteen checks from Resnick as payment on an illegal contract (*see supra* ), he cannot be regarded as having taken for value.  *Williamsen v. Jernberg*, 240 N.E.2d 758 (Ill. App.1968) (where payment/instrument is promise not to prosecute a crime, consideration is illegal and instrument is void).  Consequently, because he cannot claim that he too the checks "for value," Poeta unquestionably came into possession of stolen money, in the form of negotiable

instruments, without any defense that he is a "holder in due course."

Given the unique facts of this case, restitution finds further support under Illinois common law[8] for the recovery of a judgment. *See McAllister v. Oberne, Hosick & Co.*, 1891 WL 2143, 42 Ill. App 287 (1891) (employer allowed to recover from winner money employee embezzled and lost gambling). Indeed, one article having surveyed the area concluded:

> While there is little authority as to the rights of the owner of stolen money as against one who won it from the thief in a gambling transaction, the courts that have considered the problem have generally allowed recovery.

*Rights of Owner of Stolen Money as Against One Who Won it in Gambling Transaction from Thief*, 44 A.L.R. 1242 (1955) (collecting cases). Consequently, principles of restitution support the imposition of liability for the $647,211 Resnick paid Poeta.

Under principles of restitution, Poeta should also be held liable for prejudgment interest. Where an injured party's misappropriated funds are denied an opportunity to grow, restitution should include interest to make up for that loss, too. *See, e.g.*, *Milwaukee v. Cement Division of National Gypsum Co.*, 515 U.S. 189, 195, (1995) ("The essential rationale for awarding prejudgment interest is to ensure that an injured party is fully compensated for its loss"); *In re Oil Spill by the Amoco Cadiz*, 954 F.2d 1279, 1311-35 (7th Cir.1992) (interest should be computed at the rate the defendant would have had to pay for unsecured credit). On such claims as this, Illinois allows

---

[8] The Illinois Criminal Code authorizes a civil action allowing the gambling "loser" to recover his losses from the "winner," and, if such is not taken within such time, allows any person to bring such an action and to recover three times the proven loss amount from the "winner" §§ 28-8(a) & (b) (The "Loss Recovery Act"). *Vinson v. Casino Queen, Inc.*, 123 F.3d 655, 657 (7th Cir. 1997) ("The Loss Recovery Act was intended to deter illegal gambling by using its recovery provisions as a powerful enforcement mechanism."*); Zellers v. White*, 70 N.E. 669, 672 (Ill. 1904) (one purpose of the Loss Recovery Act was to prevent gambling and guard against situations where the "loser becomes intent on recovering his losses at the gaming table, and is frequently driven to embezzlement and theft.")

prejudgment interest of 5% per year. 815 ILCS 205/2. Prejudgment interest should begin accruing from the date of Poeta's last payment — May 15, 2002[9] — through the date of judgment at $32,360 per year.

### B. Fraudulent Transfer

Under the Federal Debt Collect Procedure Act (FDCPA), Poeta can be held liable as the recipient of a fraudulent transfer where:

- "the debtor makes the transfer ... without receiving a reasonably equivalent value in exchange for the transfer or obligation;" and

- the debtor "intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due."

28 U.S.C. § 3304(b)(1)(B)(ii). *United States v. Moore*, 156 F. Supp.2d 238, 245-46 (D. Conn. 2001) This is a constructively fraudulent transfer and does not require a showing that Resnick, the debtor, made the transfer to Poeta "with actual intent to hinder, delay or defraud a creditor." 28 U.S.C. § 3304(b)(1)(A) *and compare with* 28 U.S.C. § 3304(b)(1)(B)(ii).

Under the FDCPA, "[v]alue is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promissor's business to furnish support to the debtor or another person." 28 U.S.C. § 3303(a); *United States v. Vancampen*, 1997 WL 873537, at *4 (D. Kan., Jul 9, 1997).

Federal courts have analogized the term "reasonably equivalent value" under the FDCPA to its meaning under the Bankruptcy Code. *Id.* Value means economic value. *Id.* The value of consideration given for a transfer alleged to be in fraud of creditors is determined from the

---

[9] Exhibit F (Chizana Affidavit), ¶ 5(p).

standpoint of creditors. *In re Hinsley*, 201 F.3d 638, 643-44 (5th Cir. 2000). Value is determined as of the date of transfer. *Id.*

The unsanctioned gambling contract between Poeta and Resnick is illegal and unenforceable under Illinois law. *See supra* § A. An illegal contract is void of consideration and not regarded as providing reasonably equivalent value. *Warfield v. Byron*, 436 F.3d 551, 560 (5th Cir. 2006) (for fraudulent transfer purposes, services provided to Ponzi-scheme operators did not give "value").

With regard to the second element of § 3304(b)(1)(B)(ii) — "intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay" — courts have found that in cases where a defendant's overwhelmingly singular purpose is operating a fraudulent scheme and whose income is solely the result of fraud, the court " may find as a matter of law that the debtor intended to incur debts beyond its ability to repay." *In re Canyon Systems Corp.*, 343 B.R. 615, 650 (Bkrtcy. S.D. Ohio 2006). *See also In re National Liquidators, Inc.*, 232 B.R. 915, 919 (Bkrtcy. S.D. Ohio,1998) (same); *In re Tubman*, 160 B.R. 964, 986-87 (Bkrtcy. S.D. Ohio 1993) (same).

Resnick's conduct in fleecing Universal Bank of over $10 million in a matter of months and using the money to gamble likewise shows unmistakable intent to incur debts beyond his ability to pay.

If not held liable under the Illinois Loss Recovery Act or under principles of restitution, the court should hold Poeta liable as the recipient of a fraudulent transfer and enter judgment accordingly in the amount of $647,211. 28 U.S.C. § 3306(a)(1). Subsection 3306(a)(3) further allows "any other relief the circumstances may require." For the reasons stated above in section A, the court should also award the United States prejudgment interest on its claim at 5% per year. 815

ILCS 205/2. As a result, prejudgment interest should accrue at $32,360 per year.

## Conclusion

For the foregoing reasons the court should grant the United States' amended motion for judgment in the amount of $647,211, plus prejudgment interest, accruing from May 15, 2002 through the date of judgment at $32,360 per year, and costs.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By: /s Joseph A. Stewart
    JOSEPH A. STEWART
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 469-6008
    joseph.stewart@usdoj.gov

## CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that the following documents:

> -United States' Amended Motion for Entry of Judgment on its Petition for Relief Against Dominic Poeta
> -Memorandum in Support and Exhibits A through F

were served on March 21, 2008, in accordance with FED. R. CIV. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers, and on March 24, 2008 by regular U.S. Mail:

Adam Resnick - BOP No. 17549-424
FCI Englewood
9595 West Quincy Avenue
Littleton, Co  80123

David V. Kirby
174 Battery Street, 3rd Floor
Burlington, VT 05401
- david@kirbyoconnor.com

s/ Joseph A. Stewart
JOSEPH A. STEWART
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois
(312) 469-6008