**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) No. 05 CR 9-1 |
| v. | ) |
| | ) Hon. Wayne Andersen |
| | ) |
| ADAM B. RESNICK | ) |
| | ) |

**RESPONDENT DOMENIC POETA'S MOTION TO STRIKE GOVERNMENT'S
AMENDED MOTION FOR ENTRY OF JUDGMENT**

Respondent, DOMENIC POETA ("Poeta"), by GARY RAVITZ, ERIC S. PALLES, and

RAVITZ & PALLES, P.C., his attorneys, moves to strike the government's Amended Motion for

Entry of Judgment, and in support, hereof, states as follows:

A.     INTRODUCTION

1.     In January 2007, Adam Resnick ("Resnick") pleaded guilty to a single count of wire

fraud, and, in addition to being sentenced to a term of imprisonment, was ordered to pay $10.2 million

in restitution. To satisfy a portion of that criminal judgment, the United States initiated a citation

proceeding against Poeta, seeking to void certain transfers that Resnick allegedly made to Poeta some

five years earlier. The government originally sought to have Poeta disgorge in excess of $891,000,

but has reduced its claim by $244,000 and now seeks judgment in the amount of $ 647,211, plus

prejudgment interest.

2.     In response to the government's initial petition for relief, Poeta answered and moved

the Court for a limited amount of discovery, in the form of 14 discrete document requests in order to

prepare a defense to the government's claim. Dkt. 114. At the January 14, 2008 hearing on the

motion, the Assistant United States Attorney suggested that he be allowed to file a "judgment on the pleadings" prior to conducting discovery. He postulated that the government motion, if not dispositive, would have the salutary effect of refining and narrowing the issues in dispute.

3. Nine weeks later, the government filed the instant amended motion for entry of judgment. Respectfully, it neither disposes of nor narrows the issues presented by the petition for relief. Nor does it materially advance this litigation. The motion should be stricken, without prejudice, in its present form and at the present time.

4. The difficulty in responding to the government motion is that it is entirely unclear whether it is the promised "motion for judgment on the pleadings" under Fed. R. Civ. P. 12(c) or a motion for summary judgment under Rule 56. The motion is ambiguous on this point and, in fact, is insufficient as a matter of law on either basis.

B. THE GOVERNMENT IS NOT ENTITLED TO SUMMARY JUDGMENT

5. After a recital of some general principles relating to summary judgment, the government claims that summary judgment is "particularly appropriate" under the circumstances of this case. Government Memorandum (Dkt.125) at 6. Treating the motion as one for summary judgment, it must be first observed that the government has failed to file a "statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law," as required by Local Rule 56.1. The Rule explicitly states that "failure to submit such a statement constitutes grounds for denial of the motion" and both the Seventh Circuit and a legion of judges in this district have demanded strict compliance therewith. *Koszola v. Bd. of Ed. of City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004) (collecting cases); *Anthony Marano Co. v. Glass*, No 05 C 6403, 2007 U.S. Dist. LEXIS 5739 (N.D. Ill., January 24, 2007)

(Darrah, J.); *Daoust v. Abbott Labs*, No. 05 C 6018, 2006 U.S. Dist. LEXIS 72064 (N.D. Ill., September 19, 2006) (Holderman, J.); *French v. Hartford Life & Accident Ins. Co.*, No. 05 C 975, 2006 U.S. Dist. LEXIS 57491 (N.D. Ill., August 2, 2006) (Filip, J.); *Reynolds v. Claridge Hotel, Inc.*, No. 02 C 1012, 2003 U.S. Dist. LEXIS 17794 (N.D. Ill., October 3, 2003)(St. Eve, J.)

6.     Additionally, the government motion serves up a melange of facts that are patently inadmissible hearsay, the apotheosis (or nadir) of which is select excerpts from a book "authored" by Resnick, with one Todd Gold.  A summary judgment must be based upon "competent evidence of a type otherwise admissible at trial." *Chicago Fire Fighters Union Local No. 2 v. City of Chicago*, No. 88 C 3773, 2007 U.S. Dist. LEXIS 52910 (N.D. Ill., July 23, 2007) (Holderman, J.); *Laborers' Pension Fund v. Excellence Quest Paving & Maintenance*, No. 03 C 4259, 2007 U.S. Dist. LEXIS 81514 (N.D. Ill., October 31, 2007) (Norgle, J.). See also, *Shanklin v. Fitzgerald*, 397 F.3d 596, 602 (8th Cir. 2005) (affirming exclusion of unauthenticated and inadmissible exhibits on motion for summary judgment); *Orr v. Bank of America*, 285 F.3d 764,773(9th Cir. 2002) (same).

7.     Also, the government bases its motion upon the flawed premise that, because Poeta has asserted his Fifth Amendment privilege against self-incrimination, he "has abandoned any defense to the Petition." This is not the law. While it is true that under certain circumstances in a civil case, a defendant's silence may give rise to an adverse evidentiary inference against the party asserting the privilege, *Baxter v. Palmigiano*, 425 U.S. 308, 47 L. Ed. 2d 810, 96 S. Ct. 1551(1976), "*Baxter* does not hold that an adverse finding could properly rest on the silence, without other evidence" nor does it **"**hold that entering a civil judgment based solely on a defendant's refusal to answer on the ground of self-incrimination is not unconstitutional compulsion." *National Acceptance Co. of America v. Bathalter*, 705 F. 2d 924, 930 (7th Cir.1983). Even application of an adverse evidentiary inference

3

is questionable in the instant case. *Baxter* arises in the context of private civil litigation. The private civil plaintiff cannot, of course, offer immunity. See *National Acceptance*, *supra*, at 928. As Justice Brennan noted in *Baxter*:

> In a civil suit involving only private parties, no party brings to the battle the awesome powers of the government, and therefore to permit an adverse inference to be drawn from exercise of the privilege does not implicate the policy considerations underlying the privilege.

*Baxter*, 425 U.S. at 335 (Brennan, J., dissenting). This observation does not pertain to this case where the United States is the civil plaintiff and simultaneously free to employ the threat of criminal processes to achieve its desired result. Certainly, the inference should be utilized with prudence. By way of example, the government makes much of the fact that Poeta asserted his privilege to the question whether he was the individual referred to in the Resnick book as "Luciano 'Lucky' Petrelli." In fairness, how would Poeta know this? The fact that he asserted his privilege to this question (as he did to all questions in the citation proceeding) should not give rise to any negative inference. At least, the government is required to put forth independent proof on this point.

8.      Finally, even were all the "facts" upon which Poeta asserted his privilege determined adversely to him, i.e., if we assume that Poeta received these monies and failed to provide equivalent value, the government would still not be entitled to judgment as a matter of law. First, the motion has not demonstrated in any meaningful way that Poeta received "property of the debtor [Resnick]". Of the sixteen transactions that the government seeks to void, six involve cashier's checks executed not by Resnick, but by Maureen Navarro, the bank's chief executive officer.[1] The connection to Resnick is unclear and unproved. Poeta, a stranger to the dealings of the Universal Savings Bank, respectfully

---

[1] The government has, without explanation, withdrawn its claim regarding two of these cashier's checks.

requests discovery on this point. Secondly, the government asserts that Resnick had signatory rights and a proprietary interest in the bank account of Navarro, Ellisco & Associates ("NEA"), his accountants, relying principally upon Resnick's plea agreement. This document, which resulted in a government recommendation that Resnick be imprisoned half of the time he would normally serve under the Sentencing Guidelines, has no preclusive effect against Poeta. In fact, none of the matters contained therein have ever been adjudicated. Moreover, the assertion that Resnick was a signatory of the account is belied by the assertion of the FDIC that, although Resnick was listed as a signor on the undated NEA account signature card, his social security number was not included, in violation of customer identification procedures mandated by all federal financial institutions. FDIC Proof of Loss December 13, 2002 (Exhibit A) at p.2; BANK SECRECY ACT/ ANTI-MONEY LAUNDERING EXAMINATION MANUAL 2007, Federal Financial Institutions Examination Council (Exhibit B) at pp.47, 52-54; 31 CFR §103.121. If the funds involved in the Poeta transactions were not, and were never, Resnick's, the government has no right to look to Poeta for the satisfaction of Resnick's restitution debt. See 28 U.S.C. § 3305 ("For the purposes of this subchapter . . . . (4) A transfer is not made until the debtor has acquired rights in the asset Transferred"); Cf. *Hong Kong Electro-Chemical Works, Ltd. v.Less*, No. 05 C 3582, 2007 U.S. Dist. LEXIS 22780 (N.D. Ill. March 29, 2007) (Der-Yeghiayan, J.) (denying recovery against debtor's transferees under Uniform Fraudulent Transfer Act where transferor never transferred legal or equitable title).

9. The Federal Debt Collection Act, upon which the Petition for Relief was based, allows the government to "turn back the clock" six years to void certain transfers, but it requires certain very specific elements. 28 USC § 3304(b) provides in pertinent part:

b) Transfers without regard to date of judgment.

(1) Except as provided in section 3307, a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States, whether such debt arises before or after the transfer is made or the obligation is incurred, if the debtor makes the transfer or incurs the obligation--
    (A) with actual intent to hinder, delay, or defraud a creditor; or
    (B) without receiving a reasonably equivalent value in exchange for the transfer or obligation if the debtor--
      (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
      (ii) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

The government announces that it claims "constructive fraud" and does not have to prove actual intent to defraud under §3304 (b)(1)(A). Fair enough, but there is a complete lack of proof either that Resnick (i) was engaged or was about to engage in a transaction for which his remaining assets were unreasonably small; or that (ii) he intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due. Counsel's investigation to date[2] suggests that Resnick was a big-time and highly successful gambler. It appears that his winnings were often more than adequate to cover his bets. Indeed the government submission quotes Resnick's assertion that as of June 9 [2002] he "was up $2.2 million with Lucky." Dkt.125, Exhibit D, p. 8. The government attempts to gloss over this requirement by stating that "courts have found that in cases where a defendant's overwhelmingly singular purpose is operating a fraudulent scheme and whose income is solely the result of fraud, the court 'may find as a matter of law that the debtor intended to incur debts beyond its ability to repay.'" Dkt. 125 at 11, citing three bankruptcy cases from the Southern District of Ohio. Each of the cases relied upon by the government involved a "Ponzi scheme," i.e., a fraudulent investment operation that involves paying abnormally high returns

---

[2] We would be reluctant to characterize anything about Adam Resnick as "evidence" in this case.

("profits") to investors out of the money paid in by subsequent investors, rather than from net revenues generated by any real business. Here, Resnick asserts, and the government adopts his assertion, that he occasionally deposited into the Universal account at ANB, and the NEA account at Universal, monies, in the form of cash and checks, that represented amounts won by him from gambling." Dkt. 125-4 ("Exhibit C") at 6. The FDIC states that Resnick's deposits into the NEA account from the Horseshoe Casino in Hammond alone totaled $2,211,000. Exhibit A, p. 4.

Similarly, the government quite facilely argues, "Resnick's conduct in fleecing Universal Bank of over $10 million in a matter of months and using the money to gamble likewise shows unmistakable intent to incur debts beyond his ability to pay." This hardly suffices as an undisputed material fact, particularly when one considers that Resnick is a self-confessed gambling addict. It is thus highly likley that neither he, nor any "reasonable gambling addict" would have believed that he would incur debts beyond his ability to pay.

The case of *AT&T Universal Card Servs. v. Crutcher (In re Crutcher)*, 215 B.R. 696 (WD Tenn. 1997) is instructive. There, the court observed:

> Although the reasonable non-addicted gambler may have realized that the chances of hitting a big enough jackpot to pay off the debt were slim or that the option of refinancing a house for the third or fourth time would not exist, it is the debtor's perspective which is vital to the determination of the case at bar. Crutcher believed, in good faith, that she could repay the debt because she had hoped and believed she would hit another jackpot like the one in 1994. The amount of money she spent at Tunica on April 20th and 21st in 1995 was not out of the ordinary for her.

*Id.* at 702. See also, *In re Murphy*, 190 B.R. 327 (Bankr. N.D. Ill. 1995) (Barliant, B.J.), finding the credit card debt incurred to fund a debtor's gambling habit dischargeable where the debtor was a life-long gambling addict. The court analyzed the surrounding circumstances from the viewpoint of the debtor, given the nature of his addiction.

7

10.     A final reason to question whether Resnick knew that he would incur debts beyond his ability to pay is that it appears that both Navarro and Ellisco, neither of whom are subject to any restitution judgment were contemporaneously emptying the NEA account of substantial sums of money. According to the FDIC, in its Proof of Loss, checks or wires to Larry Ellisco from the account totaled $280,400; Ticor Title received a payment of $175,000 for Terry Navarro; Peter Burdi, Navarro's attorney and the registered agent for NEA was paid $1,081,500. At the citation proceeding, the government questioned Poeta about its Exhibit 5, not included in the government's submission, an excerpt of which is attached hereto as Exhibit C. The Exhibit demonstrates, at least that both Resnick and Navarro had contemporaneous use of the check book. See Check 354.

11.     The government has failed to show that there is no genuine issue as to any material fact or that it is entitled to judgment as a matter of law. Its failure to comply with the local rules highlights this problem and confounds Poeta's ability to determine which facts are claimed to be undisputed. It would be unwarranted for this Court to ignore these failings and attempt to divine the government's theory. "Judges are not like pigs, hunting for truffles buried" in the record. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Its motion for summary judgment should be denied in its current form, without prejudice to renew at an appropriate time. Meanwhile, Poeta's motion to conduct discrete and limited discovery in defense of this substantial monetary claim should be granted.

C.      THE GOVERNMENT IS NOT ENTITLED TO JUDGMENT ON THE PLEADINGS

12.     Assuming that the government's intent was to file its promised motion for judgment on the pleadings, the submission suffers from several additional deficiencies, particular to the consideration of the motion under Fed. R. Civ. P. 12(c). The most obvious is that a motion for

judgment on the pleadings is limited to a consideration of the pleadings, the exhibits attached thereto, and the briefs in support of the pleadings. *Thompson v. Ill. Dept. of Professional Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). The government has included extrinsic material which would require a conversion to a motion for summary judgment in any case. Additionally, the government has included a lengthy exposition upon two theories of recovery, under the doctrine of restitution and the Illinois Loss Recovery Act, neither of which were pleaded in the petition and both of which are now likely time-barred under the pertinent statute of limitations.[3]

13.     The government again misconstrues the consequences of Poeta's assertion of his Fifth Amendment privilege, complaining that he declined to answer on Fifth Amendment grounds 11 allegations and treating these facts as admitted. In fact, the court "must treat defendant's claim of the privilege as equivalent to a specific denial." *National Acceptance Co. of America v. Bathalter*, 705 F. 2d 924, 929 (7th Cir. 1983), *quoting*, 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1280 at 360-61 (1969). Because the assertion of the privilege is treated as a denial, the pertinent allegations, for purposes of a motion for judgment on the pleadings must be taken as false. *Comdisco, Inc. v. The Stuart-James Co.*, No. 91 C 2430, 1991 U.S. Dist. LEXIS 11967, at*2 (N.D. Ill., August 27, 1991) (Kocoras, J.) *citing Friedman v. Washburn Co.*, 145 F.2d 715, 717 (7th Cir. 1944). Consequently, a motion for judgement on the pleadings must be denied.

---

[3] 735 ILCS 5/13-205. ("Except as provided in Section 2-725 of the 'Uniform Commercial Code', approved July 31, 1961, as amended [810 ILCS 5/2-725], and Section 11-13 of 'The Illinois Public Aid Code', approved April 11, 1967, as amended [305 ILCS 5/11-13], actions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, *and all civil actions not otherwise provided for*, shall be commenced within 5 years next after the cause of action accrued.") (Emphasis added).

CONCLUSION

For the foregoing reasons, the government's motion should be denied.

Respectfully, submitted,

/s/ Eric S. Palles
One of the attorneys for Domenic Poeta

GARY RAVITZ
ERIC S. PALLES
RAVITZ & PALLES, P.C.
203 N. LaSalle, Suite 2100
Chicago, IL 60601
(312) 558-1689