IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No.  05 CR 9-1 |
| ADAM B. RESNICK | ) | |
| | ) | Judge Wayne Andersen |
| Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DOMINIC POETA, | ) | |
| | ) | |
| Third-Party Citation Respondent. | ) | |

**UNITED STATES' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE
RELATING TO *THE SOURCE* OF FUNDS DEPOSITED INTO THE "NEA" ACCOUNT**

Plaintiff, United States of America, by Patrick J. Fitzgerald, United States Attorney for the

Northern District of Illinois, moves *in limine* for an order barring third-party respondent Dominic

Poeta from introducing any testimony, evidence or argument relating to the source of funds deposited

into the Navarro, Elisco & Associates bank account (NEA account) at Universal Bank, and in

support thereof states as follows:

1.      It is believed that Dominic Poeta intends to introduce at the June 6, 2008 hearing

testimony and exhibits regarding the source of funds deposited into the NEA account.

2.      Dominic Poeta has advised the United States that he will stipulate to and not contest

the Plaintiff's evidence that demonstrates that Resnick gave Poeta sixteen negotiable instruments —

NEA checks or Universal Bank cashier's checks funded from the NEA account — and Poeta

negotiated these instruments by depositing them into his bank account or applying them to debts he owed.

3. Among others, Poeta has subpoenaed Lawrence Elisco and Terrence Navarro. Elisco and Navarro, like Resnick, were signatories to the NEA account. *See* Exhibit A (NEA signature card).

4. It is believed that Poeta is seeking to introduce testimony and other evidence that either Elisco, Navarro or both deposited their own money into the NEA account. It is further believed that Poeta will seek to show that the money Elisco and Navarro may have deposited would have been commingled with the money or credits Resnick's codefendants — principally Antonette Navvaro — would have unlawfully applied to the NEA account. It is further believed that Poeta will argue that the United States can only recover on those sixteen payments to Poeta whose source was either money Resnick deposited or whose source was unlawful credits Antoinette Navarro applied to the account. Conversely, that if the source was money Elisco and Terrence Navarro deposited, the United States could not recover.

5. As a signatory to the NEA account, Adam Resnick had a right to"withdraw or transfer all or any part of the account balance." Exhibit A, p. 2 under section entitled "Withdrawals." As such, Resnick had an ownership interest in all funds deposited or credits applied to the NEA account balance regardless of their source.

6. Resnick's joint ownership in the NEA account is established under the law by his "unqualified right to withdraw the full amounts on deposit in the joint accounts without notice to his codepositors" *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 723 (1985). Because of the right to withdraw bears on legal interest and ownership, the courts have held that creditors can attach

the full account balance of an owner on a joint account. *United States v. Kollintzas*, 501 F.3d 796

(7th Cir. 2007) (because defendant had right to withdraw all of the money at any time without joint

account holder's permission, government's lien attached to the full value of the account). *Highsmith*

*v. Illinois Dept. of Pub. Aid*, 345 Ill. App.3d 774, 779, 803 N.E.2d 652, 656 (2d Dist. 2004) (if

garnishee's answer shows judgment debtor holds money in joint account, the judgment creditor has

a *prima facie* case that the money in the account belongs to the judgment debtor and burden is on

the other party to the joint account to prove what part, if any, of the funds in the account belong to

him); *Leaf v. McGowan*, 13 Ill. App. 2d 58, 65, 141 N.E. 2d 67, 71 (1st Dist. 1957) (same).

7.      While the other joint account holders (Terrence Navarro and Lawrence Elisco) and

Universal Bank (through the Federal Deposit Insurance Corporation, the named victim in this case)

might seek to recover from Resnick for money wrongfully withdrawn from the NEA account, Poeta

has no standing or reason to do so.[1]  Moreover, by seeking to trace and distinguish the precise source

---

[1]  Section 2(a) of the Illinois Joint Tenancy Act provides that:

> When a deposit in any bank . . . has been made or shall hereafter be
> made in the names of 2 or more persons payable to them when the
> account is opened or thereafter, the deposit or any part thereof or any
> interest or dividend thereon *may be paid to any one of those persons*
> whether the other or others be living or not, and when an agreement
> permitting such payment is signed by all those persons at the time the
> account is opened or thereafter *the receipt or acquittance of the
> person so paid shall be valid and sufficient discharge from all parties
> to the bank for any payments so made*.

765 ILCS 1005/2(a) (emphasis supplied).  Based on this provision, Universal Bank would be
discharged from liability to the joint owner (Terrence Navarro and Lawrence Elisco) for any money
Adam Resnick would have withdrawn that was wrongful as to the codepositors (*e.g.*, using the
"codepositors" deposits to pay Resnick's debts contrary to some agreement between the joint account
holders).  *Wood v. Jack Carl Associates, Inc.*, 782 F.2d 83, __ (7th Cir. 1986) (bank not liable to
joint account holder).

of funds used to pay him (Navarro, Elisco, Resnick or Universal Bank), Poeta would be implicitly questioning the standing of the United States to recover.

8.     The government's theory of recovery is either that Resnick's money was used to pay Poeta (fraudulent transfer; Resnick's money transferred without receiving value in exchange) or Universal's money (via the credits to the NEA account Resnick's codefendants applied) was used to pay Poeta (restitution; Universal's money stolen to pay illegal gambling debt).

9.     Any of the three joint account holders (Navarro, Elisco or Resnick) — as owners of the NEA account funds — could lay claim to the money illegally paid to Poeta.[2] The joint account holders may have to settle-up between themselves based on some agreement separate the deposit agreement with the bank, but that does not prevent any one of them — including Resnick — as a rightful owner of the NEA account balances from seeking recovery.  Universal Bank, to the extent credits were also applied to the NEA account and then money was passed to Poeta, would also have standing to recover because its money was used to pay an illegal debt.

10.     Consequently, the United States — standing in the shoes of Resnick (fraudulent transfer) or in the shoes of Universal (restitution) — can seek to recover the money paid to Poeta on an illegal gambling contract.  Poeta conversely benefits not at all by adducing evidence of the source

---

[2] The Illinois Criminal Code authorizes a civil action allowing the gambling "loser" to recover his losses from the "winner," and, if such is not taken within such time, allows any person to bring such an action and to recover three times the proven loss amount from the "winner" §§ 28-8(a) & (b)  (The "Loss Recovery Act").  *Vinson v. Casino Queen, Inc.*, 123 F.3d 655, 657 (7th Cir. 1997) ("The Loss Recovery Act was intended to deter illegal gambling by using its recovery provisions as a powerful enforcement mechanism."*); Zellers v. White*, 70 N.E. 669, 672 (Ill. 1904) (one purpose of the Loss Recovery Act was to prevent gambling and guard against situations where the "loser becomes intent on recovering his losses at the gaming table, and is frequently driven to embezzlement and theft.")

of payments made to him because it was either Resnick's money or Universal Bank's money, but regardless he is legally required to pay it back.

WHEREFORE, defendant respectfully requests that the court enter an order barring third-party respondent, Dominic Poeta, from introducing any testimony, evidence or argument relating to the source of funds in the NEA account.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By:  s/ Joseph A. Stewart
    JOSEPH A. STEWART
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 469-6008

UNIVERSAL FEDERAL SAVINGS
1800 S HALSTED STREET
CHICAGO IL 60608

**ACCOUNT NUMBER** 01-61-310040

**ACCOUNT OWNER(S) NAME & ADDRESS**

NAVARRO ELISCO & ASSOCIATES
952 SKOKIE BLVD
SUITE 250
NORTHBROOK IL 60062

## OWNERSHIP OF ACCOUNT - CONSUMER PURPOSE

☐ INDIVIDUAL ☐ _____
☐ JOINT - WITH SURVIVORSHIP (and not as tenants in common)
☐ JOINT - NO SURVIVORSHIP (as tenants in common)
☐ TRUST - SEPARATE AGREEMENT:

☐ REVOCABLE TRUST OR ☐ PAY-ON-DEATH
DESIGNATION AS DEFINED IN THIS AGREEMENT
Name and Address of Beneficiaries:

| TYPE OF ACCOUNT | ☐ NEW | ☐ EXISTING |
| --- | --- | --- |
| | ☒ CHECKING | ☐ SAVINGS |
| | ☐ MONEY MARKET | ☐ CERTIFICATE OF DEPOSIT |
| | ☐ NOW | ☐ _____ |

This is your (check one):
☐ Permanent ☐ Temporary account agreement.

Number of signatures required for withdrawal ___1
FACSIMILE SIGNATURE(S) ALLOWED? ☒ YES ☐ NO

[ X _Terence M. Navarro_ ]

SIGNATURE(S) - THE UNDERSIGNED AGREE(S) TO THE TERMS STATED ON PAGES 1 AND 2 OF THIS FORM, AND ACKNOWLEDGE(S) RECEIPT OF A COMPLETED COPY ON TODAY'S DATE. THE UNDERSIGNED ALSO ACKNOWLEDGE(S) RECEIPT OF A COPY OF AND AGREE(S) TO THE TERMS OF THE FOLLOWING DISCLOSURE(S):
☒ Deposit Account Disclosure ☒ Funds Availability Disclosure
☒ Electronic Funds Transfer Disclosure ☐ TIS Disclosure
☐

## OWNERSHIP OF ACCOUNT - BUSINESS PURPOSE

☐ SOLE PROPRIETORSHIP
☐ CORPORATION: ☐ FOR PROFIT ☐ NOT FOR PROFIT
☐ PARTNERSHIP
☒ _____ LTD
BUSINESS: NAVARRO ELISCO & ASSOCIATES LTD.
COUNTY & STATE
OF ORGANIZATION: _____ IL
AUTHORIZATION DATED: _____ / /

(1): [ X _Terence M. Navarro_ ]
     X TERRENCE M. NAVARRO

I.D. # 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 D.O.B. 4/4 1967

(2): [ X _Lawrence M Elisco_ ]
     X LAWRENCE M. ELISCO

I.D. # 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 D.O.B. 7/24 1956

(3): [ X _Adam B. Resnick_ ]
     X Adam Resnick

I.D. # _____ D.O.B. / /

DATE OPENED 03/22/2001 BY Toni
INITIAL DEPOSIT $ 0.00
☐ CASH ☒ CHECK ☐ _____
HOME TELEPHONE # (312) 371-8000
BUSINESS PHONE # (847) 562-0300
DRIVER'S LICENSE # _____
EMPLOYER _____
MOTHER'S MAIDEN NAME _____
Name and address of someone who will always know your location: _____

(4): [ X ]

I.D. # _____ D.O.B. / /

## BACKUP WITHHOLDING CERTIFICATIONS

TIN: 36-4306720
☒ TAXPAYER I.D. NUMBER - The Taxpayer Identification Number shown above (TIN) is my correct taxpayer identification number.

☐ BACKUP WITHHOLDING - I am not subject to backup withholding either because I have not been notified that I am subject to backup withholding as a result of a failure to report all interest or dividends, or the Internal Revenue Service has notified me that I am no longer subject to backup withholding.

☐ EXEMPT RECIPIENTS - I am an exempt recipient under the Internal Revenue Service Regulations.

SIGNATURE: I certify under penalties of perjury the statements checked in this section.

X _____
_____ (Date)

☐ Authorized Signer (Individual Accounts Only)

[ X ]

**EXHIBIT A**

I.D.# _____ D.O.B. / /

©1992 Bankers Systems, Inc., St. Cloud, MN Form MPSC-LAZ-IL 3/1/99

(page 1 of 2)

## TERMS AND CONDITIONS OF YOUR ACCOUNT

**AGREEMENT** - This document, along with any other documents we give you pertaining to your account(s), is a contract that establishes rules which control your account(s) with us.

This agreement is subject to applicable federal laws and the laws of the state of Illinois (except to the extent that this agreement can and does vary such rules or laws). The body of state and federal law that governs our relationship with you, however, is too large and complex to be reproduced here. The purpose of this document is to: (1) summarize some laws that apply to common transactions; (2) establish rules to cover transactions or events which the law does not regulate; (3) establish rules for certain transactions or events which the law regulates but permits variation by agreement; and (4) give you disclosures of some of our policies to which you may be entitled or in which you may be interested.

If any provision of this document is found to be unenforceable according to its terms, all remaining provisions will continue in full force and effect. We may permit some variations from our standard agreement, but we must agree to any variation in writing either on the signature card for your account or in some other document.

As used in this document the words "we," "our," and "us" mean the financial institution and the words "you" and "your" mean the account holder(s) and anyone else with the authority to deposit, withdraw, or exercise control over the funds in the account. The headings in this document are for convenience or reference only and will not govern the interpretation of the provisions. Unless it would be inconsistent to do so, words and phrases used in this document should be construed so the singular includes the plural and the plural includes the singular.

**LIABILITY** - You agree, for yourself (and the person or entity you represent if you sign as a representative of another) to the terms of this account and the schedule of charges. You authorize us to deduct these charges directly from the account balance as accrued. You will pay any additional reasonable charges for services you request which are not covered by this agreement.

Each of you also agrees to be jointly and severally (individually) liable for any account shortage resulting from charges or overdrafts, whether caused by you or another with access to this account. This liability is due immediately, and can be deducted directly from the account balance whenever sufficient funds are available. You have no right to defer payment of this liability, and you are liable regardless of whether you signed the item or benefited from the charge or overdraft. This includes liability for our costs to collect the deficit including, to the extent permitted by law, our reasonable attorneys' fees.

**DEPOSITS** - We will give only provisional credit until collection is final for any items, other than cash, we accept for deposit (including items drawn "on us"). Actual credit for deposits of, or payable in, foreign currency will be at the exchange rate in effect on final collection in U.S. dollars. We are not responsible for transactions by mail or outside depository until we actually record them. We will treat and record all transactions received after our "daily cutoff time" on a business day we are open, or received on a day we are not open for business, as if initiated on the next following business day that we are open.

**WITHDRAWALS** - Unless clearly indicated otherwise on the account records, any of you, acting alone, who signs in the space designated for signatures on the signature card may withdraw or transfer all or any part of the account balance at any time. Each of you (until we receive written notice to the contrary) authorizes each other person signing the signature card to endorse any item payable to you or your order for deposit to this account or any other transaction with us. We may charge your account for a check even though payment was made before the date of the check, unless we have received written notice of the postdating in time to have a reasonable opportunity to act. We may refuse any withdrawal or transfer request which you attempt on forms not approved by us, by any method we do not specifically permit, which is greater in number than the frequency permitted, or which is for an amount greater or less than any withdrawal limitations. Even if we honor a nonconforming request, we may treat continued abuse of the stated limitations (if any) as your act of closing the account. We will use the date the transaction is completed by us (as opposed to the date you initiate it) to apply the frequency limitations. The fact that we may honor withdrawal requests that overdraw the available account balance does not obligate us to do so later. See the funds availability policy disclosure for information about when you can withdraw funds you deposit. For those accounts for which funds availability policy disclosure does not apply, you can ask us when you make a deposit when those funds will be available for withdrawal.

We may require not less than 7 days' notice in writing before each withdrawal from an interest-bearing account other than a time deposit. Withdrawals from a time account prior to maturity or prior to any notice period may be restricted and may be subject to penalty. See your notice of penalty for early withdrawal.

**OWNERSHIP OF ACCOUNT AND BENEFICIARY DESIGNATION** - These rules apply to this account depending on the form of ownership and beneficiary designation, if any, specified on the account records. We make no representations as to the appropriateness or effect of the ownership and beneficiary designations, except as they determine to whom we pay the account funds. **Individual Account** - is an account in the name of one person. **Joint Account - With Survivorship (And Not As Tenants In Common)** - is an account in the name of two or more persons. Each of you intend that when you die the balance in the account (subject to any previous pledge to which we have agreed) will belong to the survivor(s). If two or more of you survive, you will own the balance in the account as joint tenants with survivorship and not as tenants in common. **Joint Account - No Survivorship (As Tenants In Common)** - is owned by two or more persons, but none of you intend (merely by opening this account) to create any right of survivorship in any other person. We encourage you to agree and tell us in writing of the percentage of the deposit contributed by each of you. This information will not, however, affect the "number of signatures" necessary for withdrawal. **Revocable Trust or Pay-On-Death Account** - Pay-On-Death accounts may be created only if the account is owned by one person. Revocable Trust accounts may be created by accounts with one or more owners. If two or

more of you create a Revocable Trust account, you own the account jointly with survivorship. Beneficiaries of either of these account types cannot withdraw unless: (1) all persons creating the account die, and (2) the beneficiary is then living. If two or more beneficiaries are named and survive the death of the owner(s) of the account, such beneficiaries will own this account in equal shares, without right of survivorship. The person(s) creating either a Pay-On-Death or Revocable Trust account reserves the right to: (1) change beneficiaries, (2) change account types, and (3) withdraw all or part of the account funds at any time.

**BUSINESS ACCOUNTS** - Earnings in the form of interest, dividends, or credits will be paid only on collected funds, unless otherwise provided by law or our policy. We may require the governing body of the legal entity opening the account to give us a separate authorization telling us who is authorized to act on its behalf. We will honor the authorization until we actually receive written notice of a change from the governing body of the legal entity.

**STOP PAYMENTS** - You must make any stop-payment order in the manner required by law and we must receive it in time to give us a reasonable opportunity to act on it before our stop-payment cutoff time. To be effective, your stop-payment order must precisely identify the number, date and amount of the item, and the payee.

You may stop payment on any item drawn on your account whether you sign the item or not, if you have an equal or greater right to withdraw from this account than the person who signed the item. A release of the stop-payment request may be made only by the person who initiated the stop-payment order.

Our stop-payment cutoff time is one hour after the opening of the next banking day after the banking day on which we receive the item. Additional limitations on our obligation to stop payment are provided by law (e.g., we paid the item in cash or we certified the item).

**AMENDMENTS AND TERMINATION** - We may change any term of this agreement. Rules governing changes in interest rates are provided separately. For other changes, we will give you reasonable notice in writing or by any other method permitted by law. We may also close this account at any time upon reasonable notice to you and tender of the account balance personally or by mail. Notice from us to any one of you is notice to all of you.

**STATEMENTS** - You must examine your statement of account with "reasonable promptness." If you discover (or reasonably should have discovered) any unauthorized signatures or alterations, you must promptly notify us of the relevant facts. As between you and us, if you fail to do either of these duties, you will have to either share the loss with us, or bear the loss entirely yourself (depending on whether we used ordinary care and, if not, whether we substantially contributed to the loss). The loss could be not only with respect to items on the statement but other items with unauthorized signatures or alterations by the same wrongdoer.

You agree that the time you have to examine your statement and report to us will depend on the circumstances, but will not, in any circumstance, exceed a total of 30 days from when the statement is first sent or made available to you.

You further agree that if you fail to report any unauthorized signatures, alterations, forgeries, or any other errors in your account within 60 days of when we first send or make the statement available, you cannot assert a claim against us on any items in that statement, and as between you and us the loss will be entirely yours. This 60-day limitation is without regard to whether we used ordinary care. The limitation in this paragraph is in addition to that contained in the first paragraph of this section.

**ACCOUNT TRANSFER** - This account may not be transferred or assigned without our prior written consent.

**DIRECT DEPOSITS** - If, in connection with a direct deposit plan, we deposit any amount in an account which should have been returned to the Federal Government for any reason, you authorize us to deduct the amount of our liability to the Federal Government from the account or from any other account you have with us, without prior notice and at any time, except as prohibited by law. We may also use any other legal remedy to recover the amount of our liability.

**TEMPORARY ACCOUNT AGREEMENT** - If this option is selected, this is a temporary account agreement. Each person who signs in the space designated for signatures on the signature card (except as indicated to the contrary) may transact business on this account. However, we may at some time in the future restrict or prohibit further use of this account if you fail to comply with the requirements we have imposed within a reasonable time.

**SETOFF** - We may (without prior notice and when permitted by law) set off the funds in this account against any due and payable debt you owe us now or in the future, by any of you having the right of withdrawal, to the extent of such persons' or legal entity's right to withdraw. If the debt arises from a note, "any due and payable debt" includes the total amount of which we are entitled to demand payment under the terms of the note at the time we set off, including any balance the due date for which we properly accelerate under the note.

This right of setoff does not apply to this account if: (a) it is an IRA or other tax-deferred retirement account, or (b) the debt is created by a consumer credit transaction under a credit card plan (but this does not affect our rights under any consensual security interest), or (c) the debtor's right of withdrawal only arises in a representative capacity. We will not be liable for the dishonor of any check when the dishonor occurs because we set off a debt against this account. You agree to hold us harmless from any claim arising as a result of our exercise of our right of setoff.

**AUTHORIZED SIGNER (Individual Accounts only)** - A single individual is the owner. The authorized signer is merely designated to conduct transactions on the owner's behalf. We undertake no obligation to monitor transactions to determine that they are on the owner's behalf.

**FACSIMILE SIGNATURES** - You authorize us, at any time, to charge you for all checks, drafts, or other orders, for the payment of money, that are drawn on us regardless of by whom or by what means the facsimile signature(s) may have been affixed so long as they resemble the facsimile signature specimen filed with us, and contain the required number of signatures for this purpose.

**RESTRICTIVE LEGENDS** - We are not required to honor any restrictive legend on checks you write unless we have agreed in writing to the restriction. Examples of restrictive legends are "must be presented within 90 days" or "not valid for more than $1,000.00."

©1992 Bankers Systems, Inc., St. Cloud, MN Form MPSC-LAZ-IL 3/1/99

*(page 2 of 2)*